United States District Court
Southern District of Texas
**ENTERED**
October 02, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Tetra Technologies, Inc., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-26-1364 |
| | § | |
| Orinoco Natural Resources, LLC, | § | |
| *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 4. Pending before the court is TETRA Technologies, Inc.'s Motion for Default Judgment Against Orinoco Natural Resources, LLC. ECF No. 13. The court recommends that the Motion for Default Judgment be **GRANTED**.

### *1. Background Facts*

These facts are taken from TETRA's Third Party Complaint against Orinoco, ECF No. 1-1, as well as the facts set forth in its Motion for Default Judgment.

On February 27, 2018, TETRA and its then-subsidiaries—TETRA Applied Technologies, LLC (TETRA Applied) and Maritech Resources, LLC—entered into a Membership Interest Purchase and Sale Agreement (MIPSA) with Orinoco. Under the MIPSA, TETRA Applied sold 100% of Maritech's membership interests to Orinoco. Pursuant to Section 7.1(a) of the MIPSA, Orinoco took on all of Maritech's "Assumed Obligations." On the same date, TETRA and Maritech entered into an Asset Purchase Agreement (APA) with Orinoco, by which Maritech agreed to sell certain assets related to Maritech's offshore oil and gas interests.

Prior to the February 27, 2018 MIPSA and APA, TETRA indirectly wholly owned Maritech. After the February 27, 2018 MIPSA and APA, TETRA no longer wholly owned Maritech. TETRA no longer controlled Maritech—directly, indirectly, or through any of its affiliates. Instead, as of February 27, 2018, Orinoco wholly owned Maritech.

Under both the MIPSA and the APA, Orinoco agreed to indemnify TETRA for certain obligations. Sections 7.1(a) and (b) of the MIPSA provided that TETRA would be indemnified, defended, and held harmless by Orinoco for, among other things, Maritech's decommissioning obligations. Those decommissioning obligations were defined broadly to include all costs, expenses, attorney's fees, professional fees and expenses, fines, penalties, and damages. Additionally, under Sections 10.1(b) and (c) of the APA, Orinoco agreed to indemnify TETRA and hold it harmless from all "Losses" arising out of the ownership and operation of the acquired properties, including the obligations to "properly plug and abandon, or replug and re-abandon, Wells, to remove platforms and pipelines, to restore the surface of the Properties[,] and to comply with, or to bring the Properties into compliance with, Applicable Environmental Laws."

In September 2008, Hurricane Ike toppled the 'A' Platform (Platform A) in the East Cameron Block 328, OCS-G 10638 (EC 328). On July 29, 2022, the Bureau of Safety and Environmental Enforcement (BSEE) sent to Arena Energy, LLC and Arena Offshore, LP (collectively, the Arena Parties) a decommissioning order for the removal of Platform A. Eleven months later, the Arena Parties sent Maritech and TETRA a letter demanding them to fully indemnify Arena for any and all costs, responsibilities and losses related to the decommissioning of Platform A. Almost a year later, TETRA sent a letter to Orinoco demanding indemnity, pursuant to the MIPSA and the APA, for all costs and liabilities

that TETRA may incur in connection with the Arena Parties' demand. Orinoco never responded to TETRA's demand.

In February 2025, eight months after TETRA sent its demand to Orinoco, the Arena Parties sued TETRA and Maritech in the Southern District of Texas (the Related Case).[1] In that litigation, the Arena Parties allege that, in November 2002, Maritech acquired the operating rights to EC 328. They further allege that Maritech had assigned 50% of its operating rights to Arena Energy through a 2004 Purchase and Acquisition Agreement between Maritech and Arena Energy (the PAA). According to the Arena Parties, under the PAA, Maritech agreed to indemnify Arena for decommissioning costs related to EC 328. Because EC 328 includes Platform A, the Arena Parties argue that Maritech and TETRA are liable for the costs associated with decommissioning Platform A, and that they are required to indemnify Arena from all such decommissioning costs.

TETRA has denied all liability in the Related Case. TETRA also filed, within the Related Case, its Third-Party Complaint against Orinoco for a declaration of TETRA's rights and Orinoco's obligations under the MIPSA and APA. The Third-Party Complaint was severed from the Related Case and was refiled in this action. TETRA now moves for default judgment against Orinoco.

### 2. *Legal Standard and Analysis*

Judgment by default is a drastic remedy that is disfavored by the courts. *Charlton L. Davis & Co. v. Fedder Data Ctr., Inc.*, 556 F.2d 308, 309 (5th Cir. 1977); *see also Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). When considering a motion for default judgment "against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look

[1] *Arena Energy, LLC v. Maritech Res., LLC*, No. 25-cv-00641 (S.D. Tex. Feb. 13, 2025).

into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001).

The court has subject matter jurisdiction over this case and personal jurisdiction over the parties. This case is brought under 43 U.S.C. Section 1349(b)(1). Therefore, because it presents a federal question, the court has subject matter jurisdiction under 28 U.S.C. Section 1331. As to personal jurisdiction, TETRA alleges that Orinoco has its principal place of business in Texas, and that this dispute arises from activities conducted within the State of Texas. As is discussed below, Orinoco has been properly served. The court has personal jurisdiction over Orinoco.

Once the court is satisfied it has jurisdiction over the subject matter and the parties, the court must determine: (1) if a default judgment is procedurally appropriate; (2) if the plaintiff has presented a colorable claim; and (3) how to calculate damages or equitable relief. *Vela v. M&G USA Corp.*, No. 17-0013, 2020 WL 421188, at *1 (S.D. Tex. Jan. 27, 2020).

### *A. Default Judgment is Procedurally Appropriate*

To determine whether a motion for default judgment is procedurally appropriate, the court must consider relevant factors, including:

> whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey,* 161 F.3d at 893.

Here, the grounds for default are clearly established. TETRA has shown proof of service on the Defendant. ECF Nos. 1-2, 1-3, 9. Orinoco has not answered or otherwise appeared to defend this action. The Clerk of Court entered default against Orinoco. ECF No. 10. Orinoco has not moved to vacate the entry of Default. The instant motion for default judgment was served on Orinoco by certified mail. ECF No. 13 at 3.

There is no evidence that there is an issue of material fact. There is no evidence that Orinoco's default was caused by good faith mistake or excusable neglect. There is no evidence that entering a default judgment would substantially prejudice Orinoco. Denial of the instant motion, on the other hand, would deprive TETRA of its ability to seek indemnification and other appropriate relief from Orinoco. TETRA has diligently pursued this cause of action.

Orinoco has been properly served, but it has taken no action to defend the action or to advise the court of its reasons for not doing so. Under these circumstances, default judgment is not unduly harsh. The court sees no reason that it would later be obligated to set aside the default.

All six *Lindsey* factors weigh in favor of finding that default judgment is procedurally appropriate.

### *B. TETRA has Stated a Colorable Claim*

An entry of default judgment "must be supported by wel-pleaded allegations and must have a sufficient basis in the pleadings." *Wooten av. McDonald Transit Assocs., Inc.* 788 F.3d 490, 498 (5th Cir. 2015) (citation modified). Well-pleaded factual allegations are assumed to be true, except regarding damages. *United States v. Shipco Gen., Inc.,* 814 F.2d 1011, 1014 (5th Cir. 1987).

As set forth above, TETRA has established—through its well-pleaded complaint, the instant Motion, and the contracts and agreements that Orinoco entered into—that it has a colorable claim against Orinoco. Taking TETRA's allegations as true, as the court must in this context, Orinoco is obligated to indemnify TETRA for any decommissioning obligations that TETRA is found liable for in the Related Case.

***C. Calculation of Damages***

After the court determines that default judgment is both procedurally appropriate and that plaintiff has presented a colorable claim, the court must determine whether plaintiff is entitled to damages in the form of compensation or equitable relief. *Vela*, 2020 WL 421188, at *1. Here, TETRA is requesting only declaratory relief, so a calculation of damages is not necessary at this stage.

***3. Conclusion***

The court recommends that TETRA's Motion for Default Judgment, ECF No. 13, be **GRANTED**. The court recommends that final default judgment be entered in favor of TETRA against Orinoco as follows:

Orinoco is required to fulfill, perform, pay and discharge all of TETRA's decommissioning obligations related to Platform A;

Orinoco is required to indemnify, defend, and hold TETRA harmless from and against any and all Losses arising out of Platform A decommissioning obligations, including but not limited to any and all costs, expenses, and fees incurred by TETRA in connection with the Related Case and any judgments that may be issued against TETRA in the Related Case;

Orinoco is required to indemnify, defend, and hold TETRA harmless from and against any and all "Assumed Obligations," including those related to Platform A's decommissioning

obligations, including but not limited to any and all costs, expenses, and fees incurred by TETRA in connection with the Related Case and any judgments that may be issued against TETRA in the Related Case.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on October 2, 2026.

Peter Bray
United States Magistrate Judge